IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MID-MISSOURI FOOT AND ANKLE CENTER, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. ) |
| ROBERT F. KENNEDY, JR., SECRETARY, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, | ) ) ) ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT,**

COMES NOW Plaintiff, Mid-Missouri Foot & Ankle Center, Inc. (d/b/a Anderson Foot Clinic), by and through counsel, and, for its Complaint for Injunctive Relief and Declaratory Judgment against Defendant, Robert F. Kennedy, Jr., Secretary of the United States Department of Health and Human Services , alleges and avers as follows:

**INTRODUCTION**

1. As part of the Social Security Amendments of 1965, Congress established the Medicare program: a national health insurance plan to cover the cost of medical care for the elderly and disabled. See 42 U.S.C. § 1395 et seq. Officially known as "Health Insurance Benefits for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital and other institutional provider care. It also covers the costs of physician and other healthcare supplier services and items not covered under the basic program. In 1997 beneficiaries were extended the option of choosing a managed care plan. More recently, in 2006, the program was expanded further to include a prescription drug benefit.

2. Medicare covers podiatry services furnished to beneficiaries by suppliers participating in the program. See 42 U.S.C. § 1395x(r) & (s)(1 ). Such services are for medically necessary treatment of foot injuries, diseases, surgeries, or other medical treatment affecting the foot, ankle, or lower leg, and evaluation and management.

3. Medicare has randomly performed post-payment reviews by auditing healthcare suppliers participating in the program to determine if any overpayments were paid to them.

4. Medicare's payment and audit functions are performed by various federal contractors. Here, the payment of the claims for the podiatry services at issue in this case was determined by Wisconsin Physicians Service Insurance ("WPS"), a Qualified Independent Contractor ("QIC"), which investigates instances of suspected fraud, waste, and abuse as well as identifying any allegedly improper payments, that are then collected by administrative contractors through statistical sampling and extrapolation.

5. When conducting the statistical sampling and extrapolation, the contractor will select the period for review and establish the universe and sample frame. The sample frame is the large group of claims from which the sample is randomly selected, and the universe is the group of claims over which the results of the review are projected. The sample frame and universe may or may not be identical. The universe and sample frame may be defined by specific codes, dates of services, beneficiaries, or some combination thereof. From here, the contractor will select a random sample from the sample frame, review the claims within the designated sample, and extrapolate the results of the review of the sample to all claims in the established universe.

6. Any healthcare supplier participating in the Medicare program, including podiatry suppliers, who have been determined to have been allegedly overpaid, are entitled to appeal an initial action. See 42 U.S.C. § 1395ff. Federal regulations establish an elaborate administrative

appeal process to review the adverse action. See 42 C.F.R. Subpart I – Determinations, Redeterminations, and Appeals Under Original Medicare.

7. A supplier dissatisfied with an initial determination may request a Redetermination by a contractor. 42 C.F.R. § 405.942. See also 42 U.S.C. § 1395ff(a)(1)(D)(i). The Redetermination must be issued within 60 calendar days. 42 C.F.R. § 405.950. See also 42 U.S.C. § 1395ff(a)(3)(C)(ii).

8. If a supplier is dissatisfied with a Redetermination decision, it may request a Reconsideration by a QIC in accordance with 42 C.F.R. § 405.962. See also 42 U.S.C. § 1395ff(b)(3)(C)(i). The Reconsideration must be issued within 60 calendar days. 42 C.F.R. § 405.970. See also 42 U.S.C. §§ 1395ff(b)(3)(C)(ii) and 1395ff(c)(3)(C)(i).

9. In the event the supplier is dissatisfied with the Reconsideration decision, it may request to the Department of Appeals Board ("DAB") for a hearing before an Administrative Law Judge ("ALJ"), in accordance with 42 C.F.R. § 405.1014. The ALJ must issue a decision within 90 calendar days. 42 C.F.R. § 405.1016. See also 42 U.S.C. §§ 1395ff(b)(1)(A) and 1395ff(d)(1)(A).

10. The supplier may request review of the ALJ's decision by the Medicare Appeals Council ("MAC"[1]) in accordance with 42 C.F.R. § 405.1102. The MAC must issue a decision within 90 calendar days, of which its decision is the final agency action, and it is subject to judicial review. 42 C.F.R. § 405.1100. See also and 42 U.S.C. § 405(g).

11. Despite the statutorily-mandated time periods governing the appeals process, in practice it takes a supplier much longer to fully pursue its claim through the Medicare appeals process due to the backlog of Medicare appeals.

---

[1] All abbreviations henceforth refer to the Medicare Appeals Council and not the Medicare Administrative Contractor.

3

12. An exponential increase in claim appeals has caused this delay in the Medicare appeals process, fueled in large part by the Medicare Fee-For Service-Recovery Audit Contractor Program ("RAC Program"), a demonstration program that was ultimately instituted and expanded in 2010. Under the RAC Program, aggressive government contractors, such as QICs, have issued numerous inappropriate claim denials, forcing a disproportionate number of suppliers, including Plaintiff, into the Medicare appeals system to challenge these denials.

13. Defendant has wrongfully determined that Plaintiff, through extrapolation methods, received overpayments and is indebted to Medicare for $932,105.00.

14. Defendant has failed to make available, to Plaintiff, a MAC hearing within ninety (90) days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents Plaintiff from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's ultra vires actions. Such failure violates 42 C.F.R. § 405.1100 and 42 U.S.C. § 1395ff(b)(1)(A), and Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, §1. Under these facts, the administrative exhaustion requirement is excused.

**PARTIES**

15. Plaintiff, Mid-Missouri Foot & Ankle Center (d/b/a Anderson Foot Clinic), a Missouri corporation, is a podiatry practice located in Rolla, Missouri, that participates as supplier in the Medicare program.

16. Defendant, Robert F. Kennedy, Jr., in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services, the agency within HHS that is

responsible for administration of the Medicare and Medicaid programs.  He may be served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services, by certified mail.

## JURISDICTION

17. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.

18. The Court has jurisdiction over the lawsuit pursuant 42 U.S.C. §§ 405(g), 1395ii and 1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000).  Defendant's failure to make available a hearing before MAC within 90 days, while imposing recoupment, violates statutory and constitutionally required procedures.  Plaintiff has been deprived of the administrative process that effectively prevents Plaintiff from exhausting administrative remedies to challenge the illegal action.  No administrative or judicial review is otherwise available to contest Defendant's ultra vires actions.  Section 405 of the statute "would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 17.  Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).  This exception was explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23.  The amount in controversy exceeds the $1,000 jurisdictional limit.

19. The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 under the clandestine agency policy exception to the Medicare exhaustion requirement established by *Bowen v. City New York*, 476 U.S. 467 (1986).  Defendant's failure to make available a MAC hearing within 90 days

5

while imposing recoupment violates statutory and constitutionally required procedures. No administrative or judicial review is otherwise available to contest Defendant's ultra vires actions. The failure to provide a hearing in accordance within 90 days is tantamount to a "fixed clandestine policy" that violates 42 C.F.R. § 423.2100. Plaintiff has been deprived of the administrative process that effectively prevents Plaintiff from exhausting administrative remedies to challenge the illegal action. Thus, the exhaustion requirement is excused under *Bowen*.

20. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 under the entirely collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendant's failure to make available MAC hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents Plaintiff from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's ultra vires actions. Such failure violates Plaintiff's constitutional right of due process of law guaranteed by the U.S. CONST. amend. V, §1. Moreover, the failure to provide MAC hearing within 90 days and the request to suspend recoupment temporarily is not a benefits determination, but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits.

**VENUE**

21. Plaintiff's primary practice is located in Rolla, Missouri and therefore venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2), 28 U.S.C. § 1391(e)(1), and 5 U.S.C. § 703.

## CONDITIONS PRECEDENT

22. All conditions precedent have been performed or have occurred.

## FACTUAL BACKGROUND

23. Plaintiff, a Missouri corporation, is a podiatry practice, with its main office and headquarters located in Rolla, Missouri, and participates as a supplier in the Medicare Part B program.

24. In 2021, approximately 37 percent of Plaintiff's income was derived from patients enrolled in the Medicare program.

25. In 2021, Plaintiff was a successful business valued at $3.1 million, had 16 valuable employees, and many patients throughout Missouri and bordering states who relied on Plaintiff for podiatry services, including evaluation and management services.  Further, loss of revenue to Plaintiff caused a reduction in bonuses to one of its employees, Dixie Fox, DPM, leaving Plaintiff no alternative but to release Dr. Fox from her noncompete clause so that she could find new employment, thus resulting in the loss of a valuable employee, associated revenue loss, and a furtherance of hardship to Plaintiff.

26. Between October 8, 2017 and September 8, 2021, Plaintiff submitted claims for services to WPS, the Medical Administrative Contractor, who initially paid the claims in full.

27. Subsequently, CoventBridge, the Unified Program Integrity Contractor (UPIC Midwestern[2]), conducted a post-payment review of said claims.

28. On September 30, 2021, CoventBridge sent Plaintiff a request for medical records to conduct an investigation and statistical sampling for overpayment estimation of claims.

---

[2] UPIC Midwestern consists of Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, Ohio, and Wisconsin.

29. CoventBridge's investigation was predicated on receipt of information suggesting that Plaintiff allegedly billed for unreasonable and/or unnecessary debridement services, and that podiatry services covered under Medicare Part B did not include podiatric evaluation and management and/or the documentation did not support the level of services billed.

30. CoventBridge allegedly reviewed a 42-claim sample (30 original claims and subsequently an additional 12 claims) involving 82 claim-line items and subsequently denied said claims, alleging that the services performed by Plaintiff were not reasonable and necessary and/or not rendered as billed.

31. Based on review of the forty-two (42) claims, CoventBridge made a determination that Plaintiff made claims for services not medically necessary (and/or the documentation did not support the level of services billed) resulting in overpayment of five thousand eight hundred and seventy-six dollars ($5,876.00) out of the ten thousand three hundred and seventy-six dollars ($10,376.00) of claims considered.

32. Using the claim sample, CoventBridge determined a denial rate of 56.6 percent and an extrapolated amount of $932,105.00 and notified Plaintiff, on March 16, 2022, of the total claimed overpayment amount.

33. On April 4, 2022, WPS sent Plaintiff a demand letter for the overpayment amount.

34. On May 4 and 9, 2022, pursuant to 42 C.F.R. § 405.940 et seq., Plaintiff submitted redetermination requests to WPS.

35. WPS issued a redetermination decision on June 3, 2022, denying Plaintiff's requests, and upheld the overpayment determination.

36. WPS denied Plaintiff's redeterminations requests because it allegedly found that Plaintiff's services were not reasonable and necessary, its services were not rendered as billed, and/or the documentation did not support the level of services billed.

37. Between July 6 and 20, 2022, Plaintiff submitted reconsideration requests, which were received by C2C Innovative Solutions ("C2C"), the Qualified Independent Contractor, on or about July 25, 2022.

38. C2C dismissed Plaintiff's reconsideration requests on September 19, 2022, mistakenly finding that there had been no redetermination from WPS.

39. On November 3, 2022, Plaintiff submitted to the Office of Medical Hearings and Appeals ("OMHA") a request for a hearing before an administrative law judge ("ALJ").

40. On November 30, 2022, the ALJ determined that C2C's reconsideration dismissal was erroneous because redetermination was conducted by WPS, and vacated the dismissal and remanded the case back to C2C for further proceedings in accordance with 42 C.F.R. § 405.1056, including a new reconsideration.

41. On June 15, 2023, C2C issued a partially favorable decision, but there still remained an overpaid amount, for which Plaintiff was responsible for paying.

42. WPS notified Plaintiff on August 17, 2023 that, although the reconsideration was partially favorable, the recalculated extrapolated principal due was $810,980, plus $81,452.84 in interest, totaling $892,432.84, and that the recoupment, pursuant to 42 C.F.R. § 405.373, of the total amount would begin in 30 days.

43. The formula used to determine the new extrapolated amount is set forth in CoventBridge's Overpayment Extrapolation Report and Worksheet, attached hereto as Exhibit A.

9

44. Despite numerous requests (Plaintiff's requests to be provided), the claims used for the extrapolation have been denied and ignored.

45. Since the initial determination of overpayment, several of the subject claims have been found to be favorable to Plaintiff. However, the claimed overpayment and extrapolation therefrom have not been adjusted.

46. WPS began recouping the extrapolated balance from Plaintiff on or about September 15, 2023 by withholding payment from claims submitted by Plaintiff.

47. Plaintiff filed a request for a hearing before an ALJ on or about August 2023.

48. Hearings were held by the ALJ, Leslie Holt, on December 20, 2023, and January 31, 2024, during which Plaintiff argued that: the podiatry services at issue were proper and necessary; and that the extrapolation methods used to determine the overpayments were invalid, pursuant to the Social Securities Act and the Medicare Program Integrity Manual.

49. On March 21, 2024, the ALJ, entered an unfavorable decision for Plaintiff, concluding that: the services it provided by Plaintiff were not covered by Medicare Part B; and that she had no jurisdiction to review the sampling and extrapolation methods.

50. On May 20, 2024, Plaintiff timely filed, with MAC, a request for review of the ALJ's decision.

51. Pursuant to 42 C.F.R. § 405.1100, MAC has within 90 calendar days of receipt of the appellant's request for review unless that period is otherwise extended, of which, based upon Plaintiff's information and belief, there was no extension in this case.

52. Presently, MAC has not issued any decision on or a dismissal of Plaintiff's request to it the interest on the extrapolated amount owed by Plaintiff continues to accumulate.

53. As of December 10, 2025, Plaintiff owed WPS a principal sum of $675,777.41, including interest.

54. Based upon information and belief, Defendant has insinuated to several of Plaintiff's patients that Plaintiff committed Medicare fraud (even though that has never been alleged), thus resulting in not only a loss of patients and patient provided services with associated loss of income.

## CLAIMS FOR RELIEF

### Count I - Violation of Procedural Due Process of Law

55. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

56. The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee that no person shall be deprived of life, liberty, or property without Due Process of Law.

57. Defendant's failure to make available a MAC hearing within 90 days while imposing recoupment violates statutory (i.e., Medicare Act) and constitutionally required procedures.

58. Despite its inability to adjudicate the overpayment appeal, Defendant has imposed 100 percent recoupment of Plaintiff's payments after completion of the second stage of the appeal process, which, in order to compensate for lost revenue, Plaintiff had to resort to:

    a. Opening a line of credit, secured by its and/or personal real estate, resulting in further indebtedness, including the payment of interest; and

    b. Use of credit cards which has also resulted in additional indebtedness of approximately $110,000.00, to date, plus accumulating interest.

59. Further, Plaintiff faces the likelihood for irreparable harm as it may have to discharge employees and possibly forcing the closure of its offices and filing for bankruptcy.

60. Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

61. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 C.F.R. § 405.1100 and 42 U.S.C. § 1395ff(b)(1)(A), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. § 1395ddd(f)(2).

62. Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count II – Request for Preliminary and Permanent Injunction**

63. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

64. Despite its inability to adjudicate the overpayment appeal, Defendant has proceeded with 100 percent recoupment of Plaintiff's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm Plaintiff by forcing the discharge of employees (to their detriment), the closures of its five practice locations, and the filing of bankruptcy.

65. As such, a successful business valued at $3.1 million would be destroyed; 16 valuable employees would be terminated; and patients relying on Plaintiff's services would have to find podiatry services elsewhere.  Further, loss of revenue to Plaintiff caused a reduction in bonuses to one of its employees, Dixie Fox, DPM, leaving Plaintiff no alternative but to release

Dr. Fox from her noncompete clause so that she could find new employment, thus resulting the loss of a valuable employee, further revenue loss, and a furtherance of hardship to Plaintiff.

66. Plaintiff will suffer irreparable injury if Defendant is not required to temporarily suspend recoupment until it can provide a hearing decision within 90 days or otherwise follow the statutorily and constitutionally required procedures.

67. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 C.F.R. § 405.1100 and 42 U.S.C. § 1395ff(b)(1)(A) due to its inability to adjudicate the appeal, and Plaintiff is thereby entitled to injunctive relief that requires Defendant to temporarily suspend recoupment.

68. It has been over one and a half years since Plaintiff filed its request with MAC for a review of the ALJ's decision. During that time, on March 27, 2025, HHS announced, due to budget restrictions, that it will be eliminating the positions of 10,000 employees, reducing the number of regional offices, and restructuring the Department, which would combine the Office for Civil Rights, OMHA, and the ("DAB"). As a result of the budget restrictions and, and time it will take HHS to restructure the Department, it is more than likely that Plaintiff will not be accorded a hearing for at least another one and a half years, or longer.

69. Defendant has imposed recoupment to collect the alleged extrapolated Medicare overpayment of $810,980.00 in accordance with 42 U.S.C. § 1395ddd(f)(2) after issuance of the reconsideration decision, but Defendant's continued recoupment, while a genuine billing dispute remains mired in the growing backlog of claims pending before MAC, will irreparably harm Plaintiff through the destruction of its business and ultimately force it to file bankruptcy and cause its remaining Medicare beneficiaries to seek essential podiatry services elsewhere.

70. The collection and recoupment of the extraordinary amounts at issue without providing Plaintiff notice and a meaningful opportunity to be heard, as required by the applicable statute, violates Plaintiff's due process rights such that Defendant's egregious ultra vires conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process. Clearly, the combined threats of going out of business and disruption to Medicare patients are sufficient for irreparable harm.

71. There is no adequate remedy at law because continuing the improper recoupment of the alleged Medicare overpayment will force Plaintiff to discharge its employees, close its doors to its remaining patients, and file for bankruptcy, including the loss of any hope for a meaningful resolution of this dispute. Although, Plaintiff may ultimately prevail in its administrative appeal, it will nonetheless, as a practical matter, still be forced out of business and required to file bankruptcy because the recoupment will continue, long before this matter is adjudicated to finality under the process contemplated by law.

72. There is a substantial likelihood that Plaintiff will prevail on the merits because Defendant failed to make available a MAC hearing within 90 days while both continuing to impose recoupment and simultaneously continuing to violate statutory and constitutionally required procedures.

73. The harm faced by Plaintiff, due to Defendant's ultra vires act, outweighs the harm that would be sustained by Defendant if injunctive relief is not granted and, as such, Plaintiff will be forced to discharge its employees, much to their detriment, close its doors, and file bankruptcy, while Defendant, on the other hand, will only be required to do what it is obligated to do under law.

74. Issuance of a preliminary injunction would not adversely affect the public interest but, on the contrary, would ensure that Defendant will no longer pursue an ultra vires act in the calculation and collection of the alleged overpayment.

75. Plaintiff is willing to post a bond in the amount the Court deems appropriate, but it should not be required to do so on the facts of this case because Defendant is otherwise obligated to pay for podiatry services for Medicare patients under its care.

76. Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

77. In the event a preliminary injunction is granted, Plaintiff requests that the Court set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

## Count III – Declaratory Judgment

78. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

79. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

80. Despite its inability to adjudicate the overpayment appeal, Defendant has imposed 100 percent recoupment of Plaintiff's payments after completion of the second stage of the appeal process, which, in order to compensate for lost revenue, Plaintiff had to resort to:

    a. Opening a line of credit, secured by its and/or the owner's real estate, resulting in further indebtedness, including the payment of interest; and

    b. Use of credit cards which has also resulted in additional indebtedness of approximately $110,000.00, to date, plus accumulating interest.

81. Further, Plaintiff faces a likelihood for irreparable harm as it may have to discharge employees, and possibly forcing the closure of its offices and filing for bankruptcy.

82. Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

83. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 C.F.R. § 405.1100 and 42 U.S.C. § 1395ff(b)(1)(A)), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. § 1395ddd(f)(2).

84. Accordingly, Plaintiff seeks a Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 that declares Defendant has violated Plaintiff's rights under 42 C.F.R. § 405.1100 and 42 U.S.C. § 1395ff(b)(1)(A), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. § 1395ddd(f)(2).

**PRAYER FOR RELIEF**

85. For the reasons set forth above, Plaintiff prays for the following judgment and relief against Defendant:

   a. Issuance of mandatory injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures;

   b. Issuance of a declaratory judgment, declaring that Defendant violated Plaintiff's rights under 42 U.S.C. § 1395ff(b) and Due Process rights, and its deprivation of Plaintiff's statutory protections against premature recoupment under 42 U.S.C. § 1395ddd(f)(2);

      c.      Reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

      d.      Escalation of the appeal of claims not timely reviewed by the Medicare Appeals Council;

      e.      Payment to Plaintiff of all amounts applied toward recoupment to date;

      f.      Court costs; and

g.      All other relief the Court deems just and appropriate.

      Respectfully submitted,

/s/ *Randall A. Bauman*
J. Thaddeus Eckenrode, #31080
Randall A. Bauman, #42616
Lisa H. Howe, #45072
ECKENRODE-BAUMAN
Attorneys at Law
11477 Olde Cabin Rd., Ste. 110
St. Louis, MO 63141
(314) 726-6670 (Telephone)
(888) 726-9086 (Toll-free)
(314) 726-2106 (Fax)
jte@eckenrode-law.com
rab@ekenrode-law.com
lhh@eckenrode-law.com
*Attorneys for Plaintiff*